```
            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEBRASKA


UNITED STATES OF AMERICA,      •   Docket No. 4:22CR3154
                               •
         Plaintiff,            •
                               •
    vs.                        •   Lincoln, Nebraska
                               •   October 18, 2023
LOUISE GINA POLYANSKY,         •   1:27 p.m.
                               •
         Defendant.            •
• • • • • • • • • • • • • • • • •



           TRANSCRIPT OF CHANGE OF PLEA PROCEEDINGS
            BEFORE THE HONORABLE CHERYL R. ZWART
                UNITED STATES MAGISTRATE JUDGE





APPEARANCES:

For the Plaintiff:        MR. MARTIN J. CONBOY, IV, ESQ.
                          Assist. United States Attorney
                          1620 Dodge Street, Suite 1400
                          Omaha, NE  68102-1506


For the Defendant:        MS. NANCY K. PETERSON, ESQ.
                          Peterson Law Office
                          200 Windsor Place
                          330 South Tenth Street
                          Lincoln, NE  68508


Proceedings recorded by electronic sound recording; transcript
produced by transcription via mechanical stenography.
```

```
 1                         I N D E X

 2                              Direct Cross Redirect Recross

 3   WITNESSES FOR THE GOVERNMENT:

 4   None

 5   WITNESSES FOR THE DEFENSE:

 6   None

 7   EXHIBITS:                              Offered Received

 8   None

 9

10                                                      PAGE

11   FINDINGS OF THE COURT...............................  18

12   CERTIFICATE OF REPORTER.............................  19
```

1        (At 1:27 p.m. on October 18, 2023, with counsel for the
2    plaintiff present, counsel for the defendant present, and the
3    defendant present, the following proceedings were had:)
4            THE CLERK:  We're on the record.
5            THE COURT:  We're on the record in Case
6    Number 4:22CR3154.  This is United States of America vs.
7    Louise Gina Polyansky.
8            Counsel, please enter your appearance.
9            MR. CONBOY:  Thank you, Judge.  Martin Conboy on
10   behalf of the United States.
11           MS. PETERSON:  Nancy Peterson on behalf of
12   Ms. Polyansky, Your Honor.
13           THE COURT:  Ms. Polyansky, you are here today
14   because I have been told that you want to enter a plea of
15   guilty.  Is that true?
16           THE DEFENDANT:  Yes.
17           THE COURT:  I need to explain to you that I am not
18   your sentencing judge.  I am not the judge who will determine
19   whether your guilty plea is accepted and whether your plea
20   agreement is accepted.  Those matters will be taken up by
21   Judge Gerrard, who is your sentencing judge.  But what I can
22   do for you today is gather some information from you and make
23   a recommendation to Judge Gerrard on those issues.
24           Do you agree to proceed before me?
25           THE DEFENDANT:  Yes.

1      (Defendant sworn.)
2      THE DEFENDANT:  Yes.
3      THE COURT:  You are now under oath.  You have sworn
4  to tell the truth, which means if you lie during this
5  proceeding you can be separately prosecuted for the crime of
6  perjury.  Do you understand?
7      THE DEFENDANT:  Yes.
8      THE COURT:  At this time I am going to have
9  Mr. Conboy explain to you again the charge to which you
10 intend to plead guilty and the possible penalty for that
11 charge.
12     Mr. Conboy?
13     MR. CONBOY:  Thank you.
14     Ms. Polyansky, you are agreeing to plead guilty to
15 Count I of the indictment.  This charges you with a
16 conspiracy to distribute the methamphetamine, either it could
17 be 50 grams or -- of methamphetamine actual or 500 grams of
18 methamphetamine mixture.
19     The penalties for this include a term of
20 imprisonment of ten years to a maximum of life, up to a
21 $10 million fine, at least five-year term of supervised
22 release up to life, and a special assessment of $100.
23     Ms. Polyansky, do you understand the charge against
24 you and the possible penalties?
25     THE DEFENDANT:  Yes, I do.

1       THE COURT: Having heard that information again is
2  it still your intent to plead guilty?
3       THE DEFENDANT: Yes.
4       THE COURT: I have in front of me a petition to
5  enter a plea of guilty and a plea agreement, both of which
6  appear to have been signed by you. Did you go over these
7  documents with your lawyer?
8       THE DEFENDANT: Yes.
9       THE COURT: Going to the petition -- it has several
10 questions and answers in it -- did you answer each of these
11 questions truthfully?
12      THE DEFENDANT: Yes.
13      THE COURT: Were your answers written down
14 correctly?
15      THE DEFENDANT: Yes.
16      THE COURT: And after going through the document
17 did you sign it?
18      THE DEFENDANT: Yes.
19      THE COURT: Going to the plea agreement, did you
20 read it?
21      THE DEFENDANT: Yes.
22      THE COURT: Did your attorney explain it to you?
23      THE DEFENDANT: Yes.
24      THE COURT: Were there any questions about its
25 meaning that she was unable to answer?

```
 1                THE DEFENDANT:  No.
 2                THE COURT:  And after going through the document
 3   did you sign it?
 4                THE DEFENDANT:  Yes.
 5                THE COURT:  When you went over these documents,
 6   were you under the influence of drugs or alcohol or having
 7   any difficulty thinking?
 8                THE DEFENDANT:  No.
 9                THE COURT:  Are you under the influence of anything
10   right now?
11                THE DEFENDANT:  No.
12                THE COURT:  Are you having any difficulty hearing,
13   understanding, and answering my questions?
14                THE DEFENDANT:  No.
15                THE COURT:  Has anybody threatened you in any way
16   to get you to plead guilty?
17                THE DEFENDANT:  No.
18                THE COURT:  Has anybody promised you anything other
19   than the promises in the plea agreement --
20                THE DEFENDANT:  No.
21                THE COURT:  -- to get you to plead guilty?
22                THE DEFENDANT:  Oh, no.  Sorry.
23                THE COURT:  Do you understand that if the court
24   accepts your plea of guilty you will be found guilty of a
25   felony?
```

```
 1                THE DEFENDANT:  Yes.
 2                THE COURT:  Do you understand you have the right to
 3   plead not guilty and make the government try to prove this
 4   case at trial?
 5                THE DEFENDANT:  Yes.
 6                THE COURT:  Do you understand you are giving up
 7   your trial rights by pleading guilty?
 8                THE DEFENDANT:  Yes.
 9                THE COURT:  You have been represented in this case
10   by Ms. Peterson; is that correct?
11                THE DEFENDANT:  Yes.
12                THE COURT:  Do you believe that she has
13   investigated this case sufficiently so that you know what to
14   do today?
15                THE DEFENDANT:  Yes.
16                THE COURT:  Are you satisfied with her
17   representation?
18                THE DEFENDANT:  Yes.
19                THE COURT:  Do you understand that if you chose to
20   go to trial you would have the right to counsel
21   representation at the trial at no cost to you?
22                THE DEFENDANT:  Yes.
23                THE COURT:  Do you understand you would have a jury
24   trial?
25                THE DEFENDANT:  Yes.
```

1    THE COURT:  Do you understand that at that trial
2 you would have the right to see and hear the witnesses who
3 testify against you and to have them cross-examined on your
4 behalf?
5    THE DEFENDANT:  Yes.
6    THE COURT:  Do you understand you would have the
7 right to call witnesses for you, and if they would not come
8 voluntarily you could get a court order called a subpoena to
9 make them come and testify?
10    THE DEFENDANT:  Yes.
11    THE COURT:  Do you understand that if you chose to
12 go to trial you could testify yourself if you wanted to or
13 you could stay silent?
14    THE DEFENDANT:  Yes.
15    THE COURT:  Do you understand that if you stayed
16 silent at the trial the jury would not be allowed to consider
17 that silence in deciding whether you are guilty?
18    THE DEFENDANT:  Yes.
19    THE COURT:  And do you understand that if you chose
20 to go to trial the government would not get a conviction
21 against you unless it was able to prove to every single juror
22 that you are guilty beyond a reasonable doubt?
23    THE DEFENDANT:  Yes.
24    THE COURT:  Are you willing to give up all of those
25 trial rights and plead guilty in this case instead?

1   THE DEFENDANT: Yes.
2   THE COURT: With a guilty plea you will have a
3   felony record. With that felony record comes a loss of civil
4   rights. Those rights include the right to vote, the right to
5   serve in a jury, the right to hold a public office, the right
6   to carry a weapon. You can also lose federal benefits, but
7   you will lose rights. Do you understand that?
8   THE DEFENDANT: Yes.
9   THE COURT: And knowing that you will lose civil
10  rights, are you willing to plead guilty?
11  THE DEFENDANT: Yes.
12  THE COURT: You are looking at a sentence in this
13  case of a minimum of ten years and up to life in prison, a
14  possible fine of up to $10 million could be imposed in
15  addition to any term of imprisonment, supervised release of
16  at least five years and up to a lifetime, and a $100
17  mandatory special assessment.
18  Is that your understanding of what you are facing?
19  THE DEFENDANT: Yes.
20  THE COURT: Has Ms. Peterson explained the
21  sentencing guidelines to you?
22  THE DEFENDANT: Yes, she has.
23  THE COURT: Has she explained that those guidelines
24  provide the starting point that Judge Gerrard will look at in
25  determining what your sentence ought to be?

1   THE DEFENDANT: Yes.
2   THE COURT: Do you understand that Judge Gerrard
3   will consider all of your relevant conduct in determining
4   your sentence?
5   THE DEFENDANT: Yes.
6   THE COURT: For example, he's going to consider
7   such things as the amount of drugs involved, whether guns
8   were involved in the distribution of drugs, any leadership or
9   managerial role you had in drug distribution, the type of
10  drug involved, any criminal history you may have, those types
11  of things. Do you understand that?
12  THE DEFENDANT: Yes.
13  THE COURT: And once Judge Gerrard considers all of
14  your relevant conduct and makes his findings, do you
15  understand that he can sentence you within the guidelines you
16  have discussed with your attorney, but he does not have to?
17  He could go above or below them based upon his findings. Do
18  you understand?
19  THE DEFENDANT: Yes.
20  THE COURT: And once Judge Gerrard determines how
21  much time you will spend in prison, do you understand you
22  will be required to serve all of that time? And the most you
23  can get off of your sentence is 54 days per year for good
24  time served, and that's only if you earn good time. Do you
25  understand?

1    THE DEFENDANT: Yes.
2    THE COURT: Now, after you serve your time in
3    prison, your sentence will not be over. You will be subject
4    to what is called supervised release. And it is part of your
5    sentence, so I am going to explain it to you.
6         At the time of sentencing Judge Gerrard will
7    include in your sentencing order a list of rules called
8    conditions of release that you must follow under court
9    supervision for a minimum of five years and perhaps for the
10   rest of your life after you get out of prison.
11        Do you understand that?
12   THE DEFENDANT: Yes.
13   THE COURT: Do you understand that if you violate
14   those conditions you can be brought back to court and sent
15   back to jail?
16   THE DEFENDANT: Yes.
17   THE COURT: Do you understand that if you violate
18   the conditions by committing another crime, your penalty or
19   sentence on the new crime could be greater than it otherwise
20   would have been merely because you were still serving a
21   sentence in this case when you committed yet another crime?
22        Do you understand?
23   THE DEFENDANT: Yes.
24   THE COURT: You will be required to pay the $100
25   mandatory special assessment. Were you aware of that?

1       THE DEFENDANT: Yes.

2       THE COURT: Any restitution in this case?

3       MR. CONBOY: No, Your Honor.

4       THE COURT: All right. You have a plea agreement with the government which outlines your agreement regarding what should happen at the time of sentencing. Do you understand that this agreement is between you and the government and is not binding on Judge Gerrard?

9       THE DEFENDANT: Yes.

10      THE COURT: At this time I am going to have the government explain that plea agreement to you. Please listen as Mr. Conboy does that.

13      Mr. Conboy?

14      MR. CONBOY: Thank you.

15      Ms. Polyansky, the plea agreement that you are entering into, you are agreeing to plead guilty to Count I of the indictment. That is the ch- -- the conspiracy charge that I described. In exchange, United States agrees not to prosecute for any additional crimes as disclosed by the discovery.

21      As it relates to sentencing issues, we are agreeing that you will be held responsible for at least 5 kilograms but less than 15 kilograms of methamphetamine mixture. There is a provision for acceptance of responsibility, and there is a provision for safety valve.

...

1              Pursuant to this plea agreement you may not
2   request, seek, or ask for additional adjustments, departures,
3   reductions from the guidelines, and the United States will
4   recommend a low end guideline sentence.
5              The plea agreement does contain a provision that
6   you significantly limit your ability to appeal your
7   conviction and challenge the conviction through collateral
8   means.  The court will go over with you in a little bit more
9   detail what that entails, but you should know that the plea
10  agreement does contain that provision.
11             Thank you, Judge.
12             THE COURT:  Does that fairly summarize the plea
13  agreement, Ms. Peterson?
14             MS. PETERSON:  I believe it does.
15             THE COURT:  All right.  Ms. Polyansky, did you
16  listen as the government described the plea agreement?
17             THE DEFENDANT:  Yes, I did.
18             THE COURT:  Did that description match your
19  understanding of your agreement with the government?
20             THE DEFENDANT:  Yes, it did.
21             THE COURT:  Under the plea agreement you are giving
22  up your right to appeal and collateral attack with certain
23  exceptions.  I need to make sure you understand what you are
24  giving up.
25             Everything that's done by this court is subject to

```
 1   being looked at by another court to make sure it was done
 2   right.  The process is called an appeal.  The court that
 3   looks at it is the Eighth Circuit Court of Appeals.
 4              Do you understand?
 5              THE DEFENDANT:  Yes.
 6              THE COURT:  Under the terms of this plea agreement
 7   you are giving up your right to that appeal process unless
 8   you are claiming you had ineffective assistance of counsel.
 9              Do you understand?
10              THE DEFENDANT:  Yes.
11              THE COURT:  Collateral attack is different than an
12   appeal.  With a collateral attack you can challenge your
13   conviction and your sentence by claiming your constitutional
14   rights were violated.  Do you understand?
15              THE DEFENDANT:  Yes.
16              THE COURT:  Under the terms of this plea agreement
17   you are giving up your right to that type of proceeding as
18   well with two exceptions; you can claim you had ineffective
19   assistance of counsel, and you can claim that what you are
20   admitting to here today is not a crime, but in all other
21   respects you are giving up your right to collateral attack.
22              Do you understand that?
23              THE DEFENDANT:  Yes, I do.
24              THE COURT:  Do you understand that your waiver of
25   appeal and your waiver of collateral attack apply both to
```

1  your conviction and to the sentence you have not yet
2  received?
3      THE DEFENDANT:  Yes.
4      THE COURT:  Have you talked to your attorney about
5  your appeal rights and your collateral attack rights?
6      THE DEFENDANT:  Yes, I have.
7      THE COURT:  After having those discussions and
8  considering your options, have you decided to give up your
9  right to appeal and to collateral attack with the exceptions
10 listed in the plea agreement?
11     THE DEFENDANT:  Yes.
12     THE COURT:  Has anybody made any promises to you
13 that are not in the written plea agreement?
14     THE DEFENDANT:  No.
15     THE COURT:  Do you understand there is no guarantee
16 your sentence will be less because you pled guilty instead of
17 being found guilty by a jury?
18     THE DEFENDANT:  Yes.
19     THE COURT:  At this time I am going to have the
20 government explain to you the factual basis of your plea.
21 Please listen as Mr. Conboy does that.  I will ask you
22 questions about what he says.
23     Mr. Conboy?
24     MR. CONBOY:  Thank you.
25     Ms. Polyansky, had this matter gone to trial the

1  United States would have shown that on or around
2  November twenty- -- excuse me -- November 2020 you agreed and
3  worked with several others to obtain and distribute
4  methamphetamine in the Lincoln, Nebraska, area.
5         As part of the conspiracy, from about December 2020
6  until about May of 2021 co-conspirators received packages by
7  mail containing pound to multi-pound quantities of
8  methamphetamine.  And these were sent to a couple of
9  locations in Lincoln, Nebraska.
10        Part of this methamphetamine was then supplied to
11 you to distribute.  You obtained approximately seven pounds
12 total from the co-conspirators between November tw- -- 2020
13 and April of 2021.  You were also identified as someone that
14 was distributing quarter-pound to half-pound quantities of
15 methamphetamine from August 2021 to September of 2021.
16        Finally, the records that were obtained did show
17 that you were someone that had wired drug proceeds to
18 individuals in Arizona.  And all of these events as I have
19 testified to occurred -- or mentioned occurred in the
20 District of Nebraska.
21        THE COURT:  All right.  Ms. Peterson, do you agree
22 if this case went to trial that evidence would go before a
23 jury?
24        MS. PETERSON:  I do, Your Honor.
25        THE COURT:  Ms. Polyansky, did you listen as the

1   government described the evidence against you?
2         THE DEFENDANT:  Yes, I did.
3         THE COURT:  Is everything that Mr. Conboy said the
4   truth?
5         THE DEFENDANT:  Yes.
6         THE COURT:  Between November 1st of 2020 and
7   December 18th of 2021 were you in Nebraska?
8         THE DEFENDANT:  Yes.
9         THE COURT:  While in Nebraska between those dates
10  did you have -- did you work along with others to distribute
11  methamphetamine?
12        THE DEFENDANT:  Yes.
13        THE COURT:  Did you know that what you were
14  distributing was, in fact, methamphetamine?
15        THE DEFENDANT:  Yes.
16        THE COURT:  Did you buy from some and then resell
17  to others?
18        THE DEFENDANT:  Yes.
19        THE COURT:  Do you agree that over that period of
20  time you distributed and possessed with the intent to
21  distribute 500 grams or more of a mixture or substance
22  containing a detectable amount of methamphetamine?
23        THE DEFENDANT:  Yes.
24        THE COURT:  Any additional questions?
25        MR. CONBOY:  No, Your Honor.

```
 1              THE COURT:  Ms. Peterson?
 2              MS. PETERSON:  No, ma'am.
 3              THE COURT:  Mr. Conboy, do you believe the guilty
 4    plea is knowing, intelligent, and voluntary and that there is
 5    a factual basis for it?
 6              MR. CONBOY:  I do.
 7              THE COURT:  Ms. Peterson, do you agree?
 8              MS. PETERSON:  I do.
 9              THE COURT:  Ms. Polyansky, do you want the court to
10    accept your plea of guilty?
11              THE DEFENDANT:  Yes.
12              THE COURT:  Do you have any questions of me before
13    I proceed?
14              THE DEFENDANT:  No, I do not.
15              THE COURT:  To Count I of the indictment, which
16    alleges that beginning on or about November 1st of 2020 and
17    continuing to on or about December 18th of 2021 while in the
18    District of Nebraska you, along with others, did knowingly
19    and intentionally combine, conspire, confederate, and agree
20    to distribute and possess with the intent to distribute
21    500 grams or more of a mixture or substance containing a
22    detectable amount of methamphetamine, what do you plead?
23              THE DEFENDANT:  Guilty.
24              THE COURT:  I do find that your guilty plea is
25    knowing, intelligent, and voluntary and that there is a
```

1   factual basis for it.  I will recommend to Judge Gerrard that
2   he accept your plea of guilty and your plea agreement.
3             We're looking at a sentencing date of January 17th
4   of 2024 at 9 a.m.  Does that work for everyone?
5             MS. PETERSON:  Your Honor, it does not work for me
6   and...
7             THE COURT:  Okay.
8             MS. PETERSON:  And may I propose that we push it
9   off another month?
10            THE COURT:  Okay.
11            MS. PETERSON:  Mr. Conboy and I had discussed
12  setting the date now and then potentially asking for a
13  continuance down the road, but I do know probation is slammed
14  right now, and I bet they would appreciate having an extra
15  month if we're going to ask for it anyway.
16            THE COURT:  Sure.  Let me see what we have.
17            MR. CONBOY:  If it helps, I am open all of
18  February.
19            THE COURT:  Hmm?  What?
20            MR. CONBOY:  I said I am open all of February.
21            THE COURT:  Okay.  How about February 15th at
22  10:30?  Does that work?
23            MS. PETERSON:  That works for me.
24            THE COURT:  All right.  Anything else?
25            MR. CONBOY:  No, Your Honor.  Thank you.

1    THE COURT: Anything else from you, Ms. Peterson?

2    MS. PETERSON: No, nothing else. Thank you, Judge.

3    THE COURT: Ms. Polyansky, I have looked at the

4    status report for you. You had a few incidents early on --

5    THE DEFENDANT: Uh-huh.

6    THE COURT: -- from pretrial services report, and

7    it says that you have stopped doing that stuff since then.

8    And so I see, under the circumstances, no reason to detain

9    you at this time. But I will tell you this, that if there

10   are any slip-ups after this, I have to put you in jail. Do

11   you understand that?

12   THE DEFENDANT: Yes, I do, Your Honor.

13   THE COURT: All right. We are in recess.

14   MS. PETERSON: Thank you, Judge.

15   MR. CONBOY: Thank you, Judge.

16   THE COURT: Thank you.

17   (Hearing adjourned at 1:43 p.m.)

18   §    §    §

19   I certify that the foregoing is a correct transcript from the
     electronic sound recording of the proceedings in the
20   above-entitled matter.

21

22   _____*Julie A. Pell*_____        _____11/8/2023_____
          Signature of Transcriber                    Date
23        Julie A. Pell, RPR, CRR, CRC

24

25